Filed 12/16/24  In re A.W. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.W., a Person Coming Under the Juvenile Court Law. | C100321 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>E.S.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD242569) |

E.S. (mother) appeals from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code, §§ 300, 361, 395.)[1]  Mother does not dispute the juvenile

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

court's jurisdictional findings or its order removing the minor from her custody. Rather, she contends the juvenile court should not have placed the minor with T.W. (father) in Nevada because the placement was detrimental to the minor.

Because there is substantial evidence supporting the juvenile court's finding that the minor would not suffer detriment if placed with father, we will affirm the juvenile court's orders.

## BACKGROUND

During a road trip in New Jersey, mother had a physical altercation with a woman. The minor, then seven years old, intervened and sustained minor injuries. Mother was arrested, placed on a section 5150 mental hold, and transferred to jail. The minor was placed in protective custody in New Jersey. Mother completed a psychiatric and psychological evaluation for Child Protective Services (CPS) in New Jersey which showed that she had symptoms of bipolar disorder and schizophrenia. But mother denied having mental health problems and refused treatment.

The case was transferred to Sacramento County, California, where mother lived, and the Sacramento County Department of Child, Family and Adult Services (Department) filed a dependency petition pursuant to section 300, subdivision (b). The petition alleged failure to protect the minor due to mother's untreated mental health issues and substance abuse, putting the minor at substantial risk of serious harm.

The minor's resource parent in New Jersey reported the minor was in her care and doing well. Mother and father were having supervised telephone contact with the minor with no concerns. The resource parent reported that father was unemployed and living in Nevada with the paternal grandmother. A CPS supervisor in New Jersey obtained a Texas CPS report showing the minor had previously been removed from mother's care in 2019 due to mother's mental health issues. Various maternal relatives expressed concern about mother's mental health and declined to be involved in the minor's placement. But

2

maternal uncle J.S., who lived with the maternal grandmother, offered to care for the minor.

During an interview with father conducted by a Department social worker, father expressed concern that he had not been considered as a placement option. Father said mother had not allowed him to see the minor, but he visited the minor in foster placement after he learned of the proceeding in New Jersey.

Father denied substance abuse but admitted he had been diagnosed with bipolar disorder and schizophrenia. He did not take medication to treat his mental health symptoms because the medication made him feel sick. Instead, he used marijuana daily, saying it calmed his bipolar symptoms. He did not believe his use of marijuana affected his ability to parent and he insisted he would never smoke in front of the minor. He took oxycodone daily for pinched nerves and arthritis, participated in psychiatric treatment every six months, and did not have any recent mental health episodes.

Father said he would file for full custody of the minor, but his preference was to share custody with the maternal uncle and maternal grandmother. He said the minor could remain with maternal grandmother and uncle during the dependency proceeding, with the goal for him to have partial custody.

The social worker interviewed maternal grandmother and maternal uncle, both of whom expressed interest in placement of the minor. They said mother was not allowed at their home due to her mental health, anger, and substance abuse issues. The social worker also interviewed the minor, who said mother drank heavily. The minor felt safe with mother and maternal grandmother but felt intimidated by maternal uncle because she had not spoken to him. When asked about her relationship with father, the minor said father was "very fun" and "very funny, very sweet, and he buys me ice cream." She said she would like to live with father and get to know him. She also wanted to live with mother or live with both parents.

In July 2023, the Department reported that maternal uncle was willing and able to provide permanency for the minor via guardianship or adoption if reunification failed. The Department determined that placement with father was not in the minor's best interest because, among other things, father had been diagnosed with bipolar disorder; his daily use of marijuana and oxycodone might interfere with his ability to provide adequate care, protection, and supervision of the minor; father expressed willingness to use corporal punishment to discipline the minor; and although father filed for full custody, he indicated a preference for partial custody. The Department recommended that the juvenile court order the minor removed from both parents' care and placed in out-of-home placement, and that reunification services be provided to both parents, including psychotropic medication evaluation and monitoring, mental health assessment, and individual counseling for father.

However, by October 2023, father was requesting full custody of the minor and wanted her to live with him in Nevada. The minor was transported from Sacramento to Nevada for an in-person visit with father. During the three-hour visit, it was reported that the interaction between father and the minor was "great, like they have known each other forever." The minor was excited and eager to spend time with father. They spent time going out to eat, playing at an arcade, and visiting his home. The permanency social worker observed that father's home was a clean one-bedroom apartment with sufficient food and no safety hazards. Father continued to use marijuana and prescribed oxycodone. He said that if he obtained custody of the minor, he would procure a locked safe or lockbox to store the marijuana, and he would only use the marijuana when the minor was at school. Dr. Del Rosario, father's treating psychiatrist, reported that at recent appointments father exhibited realistic judgment, insight into his condition, normal attention span, and the ability to concentrate.

Several of the paternal relatives were interviewed, stating they had no concerns for the minor's safety or well-being if placed in father's care. Paternal grandmother said

father was stable, very respectful, and did better without the psychotropic medication. Paternal great-uncle had never witnessed any negative behaviors related to father's mental health and said father really wanted his child. Paternal aunt was aware father used marijuana and believed it kept him calm. She had not seen father act out since 2014, when he would go into his own world. Paternal uncle felt father was stable, and he had not seen father exhibit negative behavior.

Accordingly, the Department changed its position, recommending removal of the minor from mother's care, placement of the minor in the sole legal and physical custody of father under the supervision of the Department, and termination of dependency jurisdiction.

On November 7, 2023, the juvenile court sustained the allegations in the amended petition but continued the disposition hearing to allow for completion of an Interstate Compact on the Placement of Children (ICPC) for father in Nevada. It subsequently granted the Department's request for an extended visit (not to exceed 14 days) between the minor and father in Nevada.

The Department informed the juvenile court that Nevada did not accept the ICPC request because it considered the minor's time with father to be a placement, not a visit, leaving the Department with two options: either place the minor with father and close the dependency case or return the minor to Sacramento and resubmit the ICPC request. On December 30, 2023, the permanency social worker retrieved the minor from Nevada and returned her to the home of the maternal uncle in Sacramento. However, maternal uncle stated he was no longer able to provide placement for the minor after January 8, 2024, due to the death of maternal grandmother and the recent new employment of maternal cousin, who assisted him with care of the minor.

On January 8, 2024, the Department informed the juvenile court that father used a belt on the minor more than once as a form of discipline. On another occasion, while playing a pillow game, father hit the minor with a pillow and minor became upset and

5

called mother crying. After several discussions with father about not using corporal punishment and alternative methods of discipline, the Department engaged father in a safety plan in which he agreed not to use any method of physical discipline. Thereafter, the minor made no complaints and there were no reports of father using the belt again or playing too rough with the minor. Minor's counsel stated the minor was happy and felt safe with father but missed her uncle and cousin. The Department informed the juvenile court that maternal uncle was no longer willing to keep the minor in his care past the hearing date. The juvenile court ordered the Department to contact maternal uncle and ask again if he was willing to maintain temporary placement of the minor until the contested disposition hearing on January 17, 2024. If not, the juvenile court granted the Department the authority to send the minor to Nevada for another extended visit with father.

The Department contacted maternal uncle, who stated he was not able to keep the minor in his care. The Department retrieved the minor and transported her to the airport to travel back to father's home in Nevada. However, on January 16, 2024, maternal uncle contacted the Department stating he had a change of heart. He said his home would always be available to the minor.

At the January 17, 2024 disposition hearing, mother testified that father did not have the mental capacity to support the minor or help the minor live a healthy lifestyle. Mother testified the minor was not safe with father and should not remain in his custody based on four incidents that occurred during the minor's visit with father: father disciplined the minor with a belt; he hit the remote out of the minor's hand; he hit the minor with a pillow; and he was too rough with the minor.

Social workers testified that their recommendation was to place the minor with father and terminate the dependency. Father was seeing his psychiatrist, functioned well despite some symptoms, the psychiatrist indicated father was managing his condition, and the minor felt safe with father.

6

The juvenile court ordered the minor removed from mother's custody and placed with father, giving him sole legal and physical custody. It terminated dependency jurisdiction.

DISCUSSION

Mother contends placement of the minor with father was detrimental to the minor.

Section 361.2 establishes that, where a noncustodial parent requests custody of a minor following removal from the custodial parent pursuant to section 361, " 'the court *shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child' (§ 361.2, subd. (a))." (*In re Z.K.* (2011) 201 Cal.App.4th 51, 70.) "The juvenile court must make the detriment finding by clear and convincing evidence." (*Ibid.*) "[I]t is the party opposing placement who has the burden to show by clear and convincing evidence that the child will be harmed if the nonoffending parent is given custody." (*Ibid.*)

When reviewing a juvenile court's placement order, we review the record in the light most favorable to the juvenile court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that the minor would suffer detriment. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.)

Here, father was the minor's noncustodial parent, and he requested custody of the minor following removal from mother. Thus, mother had the burden to show that placement with father would be detrimental to the safety, protection, physical or emotional well-being of the minor. (§ 361.2, subd. (a).) Mother claims the juvenile court, the Department, and minor's counsel minimized or ignored evidence of the two primary bases supporting a finding of detriment: father's mental health conditions and his use of corporal punishment on the minor. She argues father had bipolar disorder and schizophrenia and was hearing voices up until the time he took custody of the minor; he was not taking his prescribed psychotropic medication; and he was self-medicating with

7

daily use of marijuana in combination with oxycodone he took for pain. She further argues father told the social worker he intended to and did use corporal punishment on the minor.

Mother has not established that placement with father created a substantial danger to the minor's physical health, safety, protection, or physical or emotional well-being. Father admitted his mental health issues and his use of marijuana. He said he would ensure the drug would not be accessible to the minor and he would only use it when the minor was at school. Father's medical records indicated he attended appointments with his psychiatrist, who reported father had realistic judgment, insight into his condition, normal attention span, and the ability to concentrate. Various members of father's family said father was stable and respectful. They supported placement of the minor with him. The Department changed its recommendation once it felt confident the earlier concerns with father's mental health had been managed and father was stable and capable of parenting the minor. The minor was happy and felt safe with father and her counsel did not object to the placement.

The record does not support mother's assertion that father was fixated on corporal punishment and repeatedly beat his daughter. As the juvenile court noted, father admitted hitting the minor twice with a belt, hitting her once with a pillow, and hitting the remote out of her hand. He acknowledged his errors, contacted family members and the social worker, had lengthy discussions with Department staff during which he was educated on unacceptable and acceptable methods of discipline, and agreed to a safety plan. Thereafter, the minor expressed no concerns about being with father.

Reviewing the record in the light most favorable to the juvenile court's placement order, there is substantial evidence to support the juvenile court's finding that the minor would not suffer detriment if placed with father. (*In re Luke M.*, *supra*, 107 Cal.App.4th at p. 1426.) Mother's contention lacks merit.

DISPOSITION

The juvenile court's orders are affirmed.


/s/
MAURO, J.


We concur:


/s/
EARL, P. J.


/s/
ROBIE, J.